NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0257n.06

Case No. 17-4046

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 24, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| MOHAMED AHMED, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: CLAY, STRANCH, and LARSEN, Circuit Judges.

CLAY, Circuit Judge. Defendant Mohamed Ahmed ("Ahmed") appeals from the judgment entered by the district court revoking Ahmed's citizenship and cancelling his Certificate of Naturalization under 8 U.S.C. § 1451(a). For the reasons set forth below, we **AFFIRM** the district court's judgment.

**BACKGROUND**

**I.      Factual History**

Ahmed is a native of Somalia. He is an imam employed in Columbus, Ohio who travels to different Somali communities around the world giving speeches, sermons, and lectures, and providing counseling.

Ahmed immigrated to the U.S. on June 21, 1997, as a lawful permanent resident. In May 2002, Ahmed sought U.S. citizenship, executing an Application for Naturalization on May 28, 2002. In order to obtain assistance in completing that application, Ahmed went to WIN Translation Services ("WIN"). A WIN employee completed Ahmed's application. Ahmed signed and dated the application, certifying under penalty of perjury that all of the information contained within the application was "true and correct." (R. 59, Trial Tr., PageID # 1484–85.) WIN filed the form for Ahmed. The parties dispute who filled out Ahmed's application and what occurred during the preparation of the application.

The application asked about Ahmed's foreign travel in the five years preceding his application, from May 28, 1997 to May 28, 2002. Foreign travel is relevant to certain statutory requirements for naturalization. Under 8 U.S.C. § 1427(a)(1), an applicant must be physically present for at least 30 months of the five years (60 months) preceding the date of filing the application (the "physical presence" requirement). Under 8 U.S.C. § 1427(b), an applicant cannot have been absent for a continuous period exceeding six months during that five-year period (the "continuous residence" requirement). Ahmed's application indicated that he had taken no trips outside of the U.S. during the relevant statutory time. This information was incorrect because Ahmed did travel abroad during those five years. In fact, he made thirteen trips outside of the U.S. as part of his work and to visit his family. Ahmed testified that those trips averaged from two to four months and one of those trips may have been over six months.

The application also asked about Ahmed's marital history and children. Ahmed's application indicated that he had one wife and listed the children that he had with that wife. The government contended that this information was also inaccurate because Ahmed had what he referred to as a "religious" or "cultural" wife and children with her as well.

On February 27, 2003, after submitting his naturalization application, Ahmed appeared for a naturalization interview. While the parties dispute what occurred during the interview, they do not dispute that the interview was conducted by Yvonne Jarrett ("Jarrett") (formerly Valenzuela). During that interview, Ahmed affirmed under oath that all the information in the application was true and correct. Another immigration officer, Terence Lee ("Lee"), re-verified Ahmed's application the same day. The Immigration and Naturalization Service ("INS") (now United States Citizenship and Immigration Services) approved Ahmed's naturalization application on February 27, 2003, and administered his oath of allegiance, granted him U.S. citizenship, and issued a Certificate of Naturalization on March 3, 2003.

## II.     Procedural History

On October 16, 2012, the United States filed a complaint to revoke and set aside Ahmed's citizenship and to cancel his Certificate of Naturalization pursuant to 8 U.S.C. § 1451(a). The government alleged that Ahmed had provided false information in his Application for Naturalization, which was "reaffirmed under penalty of perjury at the conclusion of [his] naturalization interview." (R. 1, Complaint, PageID # 7.) The government cited the false statements and testimony regarding Ahmed's trips outside of the U.S. and his marital history. The government argued that denaturalization was required because Ahmed illegally procured his naturalization and procured his naturalization by concealment of a material fact or by willful misrepresentation.

A two-day bench trial was held from April 26–27, 2016. On September 20, 2017, the district court issued its findings of fact and conclusions of law. The court found that Ahmed had "procured his naturalization by concealment of material facts and willful misrepresentations based on his travel outside of the United States." (R. 65, Findings, PageID # 1619.) The district

court did not address the government's other arguments that Ahmed had failed to disclose his marital history and had given false testimony. The court granted the government's request to revoke and set aside Ahmed's citizenship and to cancel his Certificate of Naturalization.

On October 3, 2017, Ahmed timely filed a notice of appeal.

## DISCUSSION

### I.      Misrepresentation or Concealment

### Standard of Review

This Court reviews the district court's conclusions of law *de novo*, its findings of fact for clear error, and its evidentiary rulings for abuse of discretion. *United States v. Mandycz*, 447 F.3d 951, 957 (6th Cir. 2006).

A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. at 573–74. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574 (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). This is true whether the district court's finding rests on credibility determinations, physical or documentary evidence, or inferences from other facts. *Id.* "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally

inconsistent, can virtually never be clear error." *Id*. at 575. "A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (citing *Anderson*, 470 U.S. at 574).

**Analysis**

"No alien has the slightest right to naturalization unless all statutory requirements are complied with . . . ." *United States v. Ginsberg*, 243 U.S. 472, 475 (1917). However, "the right to acquire American citizenship is a precious one and . . . once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). Consequently, the government "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." *Costello v. United States*, 365 U.S. 265, 269 (1961). And the evidence justifying revocation of citizenship must be "clear, unequivocal, and convincing" and "not leave the issue in doubt." *Schneiderman v. United States*, 320 U.S. 118, 125 (1943) (citation and internal quotation marks omitted).

Under 8 U.S.C. § 1451(a), a citizen may be denaturalized when the order and certificate of naturalization was "procured by concealment of a material fact or by willful misrepresentation." "[T]he provision plainly contains four independent requirements: the naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States*, 485 U.S. 759, 767 (1988).

After considering the first requirement, the district court concluded that Ahmed's application contained misrepresentations or concealments regarding his international travel. On appeal, Ahmed argues that the district court clearly erred in finding that Ahmed misrepresented

his foreign travel. He argues "it was undisputed at trial that Mr. Ahmed disclosed his foreign travel during his naturalization interview" by bringing his passport to the immigration interview and the district court erred in concluding otherwise. (Ahmed Br. at 14.)

As an initial matter, Ahmed's own testimony does support his contention that he provided his passport to the naturalization officer. Ahmed testified that he received an appointment letter which specifically instructed him to bring his passport to the interview. He testified that he did in fact bring his passport, which reflected foreign travel, to the interview and gave it to Jarrett. He testified that she reviewed the passport, took it out of the room with her, and brought it back. He did not know whether she made a copy of the passport. Ahmed testified that Jarrett did not ask any questions about his travel or go over the questions in the application regarding foreign travel or amount of time spent outside the U.S.

However, the evidence is not nearly as one-sided as Ahmed suggests. The district court also heard from government witnesses whose testimony supported the government's view that Ahmed did not bring his passport to, or verbally disclose his foreign travel during, the naturalization interview. For example, although she did not specifically remember Ahmed or his interview, [1] Jarrett testified that she always asked applicants every question on the naturalization

---

[1] Ahmed seems to suggest that it was improper for the district court to rely on Jarrett's and Lee's testimony regarding their standard and customary practices during naturalization interviews because they had no recollection of him. In one sentence, he notes that the government presented witnesses who had no memory of Ahmed, his application, or his interview. In the next sentence, he says, "The witnesses testified generally as to their standard procedures – over 13 years earlier." (Ahmed Br. at 13–14.) Ahmed does nothing more than hint at this argument. He also does not cite a single legal authority to support this argument. "[I]t is not the job of an appellate court to make these arguments for him." *United States v. Brownlee*, 716 F. App'x 472, 477 (6th Cir. 2017). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alterations omitted) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

application. She was confident that she asked Ahmed all questions and that Ahmed personally confirmed the answers to those questions based on the fact that she approved his application. Jarrett testified that if Ahmed had disclosed his international trips or presented her with his passport, she would have confronted him about his travel and would have asked follow up questions, annotated the application, and made a copy of the passport. The district court also heard from Lee, who conducted a quality review of Ahmed's naturalization application to make sure all the statutory requirements and policy requirements had been fulfilled. He testified that he believed Jarrett asked Ahmed the questions related to foreign travel because there was a red mark at the top of the page containing those questions by Ahmed's alien number ("A number") and because of the significance of the questions. Lee testified that had a copy of Ahmed's passport been in the file, he would have brought the application back to Jarrett because it reflected "multiple" travel dates. (R. 58, Trial Tr., PageID # 1283–84.)

As a result, Ahmed is simply incorrect that there was "only one permissible conclusion from the evidence presented at trial." (Ahmed Br. at 14.) Another permissible conclusion from Jarrett's and Lee's testimony was that Ahmed neither presented his passport during his interview nor verbally disclosed his travel during the immigration interview. Consequently, the record does support a finding that Ahmed had misrepresented his foreign travel. Accordingly, we

---

Furthermore, even if the Court were to consider this argument, there is no authority to support Ahmed's suggestion. *See United States v. Syouf*, No. 3:98CV7175, 1999 WL 689953, at *3 (N.D. Ohio Mar. 26, 1999) ("The defendant contends that lesser weight should be given to testimony that is based on an INS examiner's 'invariable practice' instead of personal recollection. Testimony about habit is expressly sanctioned by Fed. R. Evid. 406, and, contrary to the defendant's argument, testimony about an examiner's invariable practice may be determinative."), *aff'd*, 238 F.3d 425 (6th Cir. 2000) (Table); *United States v. Rossi*, 319 F.2d 701, 702 (2d Cir. 1963) ("The Government produced . . . various officers who conducted the several [naturalization] inquiries. These officers testified as to the practice and procedure in conducting the inquiries. . . . Such evidence was admissible and determinative."); *United States v. Oddo*, 314 F.2d 115, 117 (2d Cir. 1963) ("Testimony as to custom and practice [in naturalization interviews] is admissible as circumstantial evidence [in denaturalization proceedings], subject to the usual condition that its probative value outweigh any possible prejudicial impact.").

affirm the district court's conclusion that Ahmed misrepresented and concealed his international travel.[2]

## II.    Willfulness

### Standard of Review

This Court reviews the district court's conclusions of law *de novo*, its findings of fact for clear error, and its evidentiary rulings for abuse of discretion. *Mandycz*, 447 F.3d at 957.

The parties dispute the appropriate standard of review on this question. Ahmed asserts that the standard is *de novo*, while the government asserts that it is clear error. But because Ahmed argues that the district court's finding is legally insufficient to constitute willfulness, this question is properly characterized as a mixed question of law and fact. *See Byrne v. United States*, 857 F.3d 319, 326 (6th Cir. 2017) ("[W]e believe that, at least in this context, willfulness is a question of ultimate fact because finding that someone was willful requires the application of a legal standard to underlying facts. [Plaintiffs] do not challenge the district court's factual findings regarding their conduct; they challenge whether this conduct satisfies the legal standard of willfulness. We therefore review de novo the district court's holding [regarding willfulness]."). Thus, we review the district court's findings of fact related to willfulness for clear error, but review *de novo* whether those findings satisfy the legal standard of willfulness.

---

[2] Ahmed also makes an argument that the materiality requirement was not met because the statements in his application "had no bearing at all on the decision to award citizenship" because he disclosed his foreign travel to the government by providing it with his passport. (Ahmed Br. at 15–16.) This argument seems more appropriately characterized as another challenge to the district court's misrepresentation finding because it is based on Ahmed's assertion that there is only one permissible view of the facts and that he disclosed his foreign travel by handing over his passport. And other than disputing the underlying facts, Ahmed does not argue that the district court erroneously concluded that the responses to the foreign travel questions were material. The government characterizes Ahmed's argument as "another attack on the district court's factual finding of misrepresentation dressed up in 'materiality' clothing." (Gov't Br. at 27.) We agree and dispose of the argument here as well.

*United States v. Demjanjuk*, 367 F.3d 623, 636 (6th Cir. 2004) (citing *United States v. Harris*, 246 F.3d 566, 570 (6th Cir. 2001)).

## Analysis

The second of the requirements under § 1451(a) is that the misrepresentation or concealment must have been willful. *Kungys*, 485 U.S. at 767. A misrepresentation is willful if it was deliberate and voluntary. *Parlak v. Holder*, 578 F.3d 457, 463–64 (6th Cir. 2009); *see also United States v. Arango*, 670 F.3d 988, 995 (9th Cir. 2012); *Toribio-Chavez v. Holder*, 611 F.3d 57, 63 (1st Cir. 2010); *Mwongera v. I.N.S.*, 187 F.3d 323, 330 (3d Cir. 1999). Knowledge of falsity is sufficient to show willfulness. *Parlak*, 578 F.3d at 463. An intent to deceive is not necessary. *Id.*

The district court concluded that Ahmed willfully misrepresented his foreign travel. On appeal, Ahmed argues that the record does not support a finding that he deliberately misrepresented his foreign travel as there is "no evidence on record to show that Mr. Ahmed intended to misrepresent his foreign travel, or that he knew that his foreign travel had been misrepresented." (Ahmed Rep. Br. at 7.)

In this case, Ahmed knew that he had traveled internationally during the five years preceding the filing of his application. Further, evidence in the record supports a finding that Ahmed knew that his application had misrepresented his foreign travel and that he failed to verbally disclose his travel during his naturalization interview. For instance, Bich Khue Truong ("Truong") from WIN testified that she was certain she completed Ahmed's application even though she did not specifically remember Ahmed. Truong testified that she would have asked Ahmed all of the questions on the application, filled in the answers as provided by Ahmed, and then reviewed the application with him to make sure everything was correct. She testified that

Ahmed would have read the application for the purposes of catching any errors. Truong testified that she had never seen Ahmed's passport. She testified that if Ahmed had presented her with his passport, she would have reflected on the form the travel indicated on the passport. She said she would not have written zero international trips on the application form if Ahmed had told her he had traveled or if she had seen his passport. Additionally, as detailed above, Jarrett testified that, based on her normal procedures, Ahmed did not bring his passport to the interview or verbally disclose his travel during the naturalization interview, even though she asked him questions about it. Furthermore, Ahmed signed Part 13 of his application certifying "under penalty of perjury . . . that I know that the contents of this application for naturalization subscribed by me . . . are true and correct to the best of my knowledge and belief" and the district court found that he did so during his naturalization interview. (R. 65, Findings, PageID # 1613 n.6.; R. 22-3, Application, PageID # 283.)

The record considered in its entirety does support finding that Ahmed knew he had traveled internationally, that Ahmed knew his application misrepresented his extensive foreign travel, and that Ahmed confirmed his travel history during the interview. Accordingly, we affirm the district court's conclusion that Ahmed willfully misrepresented his foreign travel.

## III.   Procurement

### Standard of Review

This Court reviews the district court's conclusions of law *de novo*, its findings of fact for clear error, and its evidentiary rulings for abuse of discretion. *Mandycz*, 447 F.3d at 957. "To the extent that the questions of law are predicated on factual findings, this Court reviews the factual findings for clear error." *Demjanjuk*, 367 F.3d at 636 (citing *Harris*, 246 F.3d at 570).

**Analysis**

The final requirement under § 1451(a) is that the naturalized citizen "procured citizenship as a result of the misrepresentation or concealment." *Kungys*, 485 U.S. at 767. The materiality and procurement elements are separate, and "satisfaction of one does not necessarily mean satisfaction of the other." *United States v. Latchin*, 554 F.3d 709, 713 (7th Cir. 2009); *see Kungys*, 485 U.S. at 767. Procurement requires that "citizenship be obtained as a result of the application process in which the misrepresentations or concealments were made." *Kungys*, 485 U.S. at 776. The Supreme Court split on what more procurement requires in a "maddeningly fractured" opinion. *Latchin*, 556 F.3d at 713. The Seventh Circuit summarized the division as follows:

> Justice Stevens, speaking for two others, advocated what amounts to a "but for" test-that the government has to establish that citizenship would not have been conferred but for the misrepresentation. Justice Scalia, joined by two others, rejected this construction because it would make the materiality requirement meaningless, "requiring, in addition to distortion of the decision [(procurement)], a natural tendency to distort the decision [(materiality)]." [*Kungys*, 485 U.S.] at 776, 108 S. Ct. 1537. But Justice Scalia and company did agree that procurement requires more than just obtaining citizenship "as a result of the application process in which the misrepresentations or concealments were made." To them, proof of a material misrepresentation created a presumption that citizenship was procured on that basis. However, the citizen could rebut that presumption by showing that she was actually eligible for citizenship. Justice Brennan wrote a separate concurrence joining in Justice Scalia's opinion to make a controlling plurality. Justice Brennan's controlling opinion stressed that citizenship is a "most precious right" and added a more restrictive gloss to Justice Scalia's view. *Id.* at 783, 108 S. Ct. 1537 (Brennan, J., concurring). Although Justice Brennan agreed that a material falsehood can raise a presumption of ineligibility, he said that presumption does not arise unless the government produces evidence sufficient to raise a "fair inference of ineligibility." *Id.* at 783, 108 S. Ct. 1537 (Brennan, J., concurring).

*Latchin*, 554 F.3d at 713–14 (first and second alterations in original).

Applying the Seventh Circuit's rationale, Justice Brennan's concurring opinion controls on this point.[3] *See id*.; *United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016); *United States v. Alferahin*, 433 F.3d 1148, 1155 (9th Cir. 2006). So, as the *Latchin* court put it, "[a]t the end of the day, then, the government only wins if it shows that the citizen misrepresented a material fact *and* it is 'fair to infer that the citizen was actually ineligible.'" *Latchin*, 554 F.3d at 714 (footnote omitted) (citing *Kungys*, 485 U.S. at 784 (Brennan, J., concurring)). The rebuttable "presumption of ineligibility does not arise unless the Government produces evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Kungys*, 484 U.S. at 783 (Brennan, J., concurring). "Evidence that simply raises the possibility that a disqualifying fact might have existed does not entitle the Government to the benefit of a presumption that the citizen was ineligible, for as we have repeatedly emphasized, citizenship is a most precious right and as such should never be forfeited on the basis of mere speculation or suspicion." *Id*. (citation omitted).

The district court correctly found that Ahmed procured his naturalization as a result of his misrepresentation about his foreign travel. Ahmed misrepresented a material fact and it is fair to infer that he was actually ineligible for citizenship. As noted by the district court, Ahmed admitted that he took thirteen international trips during the relevant time period, and that each trip lasted two to four months and one may have lasted more than six months. This testimony implicates two separate statutory requirements for eligibility. An applicant cannot have been absent for a continuous period exceeding six months during the five-year period preceding his application. 8 U.S.C. § 1427(b). But Ahmed indicated he may have been on a trip that exceeded six months. An applicant must also have been physically present in the U.S. for at least thirty

---

[3] Both parties agree with this.

months of the preceding five year period. 8 U.S.C. § 1427(a)(1). But as the district court noted, "[g]iven that one trip possibly exceeded six months, if even one of the remaining twelve trips exceeded two months, Defendant's cumulative foreign travel would have exceeded thirty months." (R. 65, Findings, PageID # 1631.) Alternatively, the district court noted that "even if one of the trips did not exceed six months, if only three or four of the thirteen trips were three or four months in duration, Defendant's cumulative travel would have exceeded thirty months." (*Id*. at # 1631 n.9.) Ahmed's travel was sufficient to break both the continuous residence requirement and the physical presence requirement, rendering him statutorily ineligible for citizenship. Because the evidence in this case raises a fair inference of actual ineligibility, the rebuttable presumption of ineligibility arises. Ahmed failed to rebut this presumption.

Accordingly, we affirm the district court's conclusion that Ahmed procured citizenship as a result of his misrepresentation.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.