**F I L E D**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENANT CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHRISTOPHER TENDERHOLT,

    Defendant-Appellant.

No. 04-8097

(D.C. No. 04CR-00059-01B)
(D.Wyo.)

---

## ORDER AND JUDGMENT *

---

Before **BRISCOE, BRORBY,** and **LUCERO** , Circuit Judges.

Defendant Christopher Tenderholt pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In light of Tenderholt's prior state convictions, the district court sentenced Tenderholt under the provisions of the Armed Career Criminal Act (ACCA) to a term of imprisonment of 250 months. Tenderholt now appeals. We exercise jurisdiction

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pursuant to 28 U.S.C. § 1291 and affirm.

I.

On December 28, 2003, Sergeant Allen Thompson of the Sheridan, Wyoming Police Department stopped a car driven by Tenderholt. Thompson's suspicions were raised during the course of the stop because Tenderholt initially gave him a fictitious name, and the license plates on the vehicle, though registered in the name of Tenderholt's passenger, matched a different vehicle. Tenderholt ultimately fled the scene of the stop and a high-speed chase over snow-packed roads ensued. Tenderholt, who was forced to stop and abandon his car due to road conditions, was captured as he attempted to flee on foot. A subsequent search of the vehicle driven by Tenderholt revealed two semi-automatic .22 caliber handguns, one in the center console and the other pushed down between the passenger seat and the center console, as well as three packages of .22 caliber ammunition. One of the .22 caliber handguns was determined to have been stolen from a store in Hardin, Montana.

On March 18, 2004, Tenderholt was indicted on four criminal counts arising out of his conduct on December 28, 2003. Count I charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Count II charged him with being a felon in possession of ammunition, also in violation of § 922(g)(1). Count III charged him with knowingly possessing a

2

stolen firearm, in violation of 18 U.S.C. § 922(j). Lastly, Count IV charged him with being a fugitive in possession of a firearm, in violation of 18 U.S.C. § 922(g)(2).

Tenderholt subsequently entered into a written plea agreement with the government, pursuant to which he agreed to plead guilty to Count I of the indictment. In return, the government agreed to dismiss the remaining three counts. On June 21, 2004, the district court conducted a change of plea hearing and accepted Tenderholt's plea of guilty to Count I. During the hearing, the government advised the court and defendant that, due to his prior convictions, he might qualify as an armed career criminal under 18 U.S.C. § 924(e) and thus would be facing a mandatory minimum sentence of fifteen years.

Following the acceptance of Tenderholt's guilty plea, the probation office prepared and served on Tenderholt a presentence investigation report (PSR). Without taking into account Tenderholt's prior convictions, the PSR calculated an adjusted offense level of 20. Applying the provisions of U.S.S.G. § 4B1.4(a) and 18 U.S.C. § 924(e), however, the PSR concluded that, due to Tenderholt's four prior convictions for burglary, he was an armed career criminal and thus subject to a total offense level of 33. Tenderholt objected to this determination on several grounds, including that "it [wa]s unknown if [his] prior burglary convictions me[t] the elements of generic burglary," as required for those

3

convictions to trigger application of the ACCA. ROA, Vol. 4, Addendum to PSR, at vi.

The district court conducted Tenderholt's sentencing hearing on September 1, 2004. Tenderholt continued to object to application of the ACCA, arguing, in pertinent part, that the Montana burglary statute under which his prior convictions occurred encompassed conduct going beyond § 924(e)'s definition of "burglary" (as outlined by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990)), and that "without evidence of his guilty plea[s]" in those cases, the district court was "unable to make an application or apply the" ACCA to his case. ROA, Vol. 3, at 60. The district court rejected Tenderholt's objection:

> Generic burglary is defined . . . in Taylor as a conviction for crime having basic elements of unlawful or unprivileged entry into or remaining in a building or structure with intent to commit a crime. As I've noted, all three of these informations [underlying Tenderholt's prior burglary convictions] meet that definition clearly. And I think that under the Taylor definition of generic burglary, these informations clearly are generic burglary, and, therefore, I'm going to deny this objection, also. I think that each charge includes all the elements for generic burglary as set forth in Taylor, and, thus, the objection must be denied.

Id. at 62. Accordingly, the district court agreed with the PSR and adopted a total offense level of 33, a criminal history category of 6, and a resulting Guideline range of 235 to 293 months. Id. at 68. Ultimately, the district court sentenced Tenderholt to a term of imprisonment of 250 months because the district court concluded he was "a dangerous criminal" who was "unwilling to change [his]

4

behavior" and thus needed to be "incarcerate[d] . . . for a lengthy period of time." Id. at 69.

## II.

*Application of the ACCA*

Tenderholt contends the district court erred in applying the ACCA to his case. The ACCA "mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies." Shepard v. United States, 125 S. Ct. 1254, 1257 (2005). Burglary is considered a "violent felony" for purposes of the ACCA "only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle." Id.

Tenderholt argues that his prior burglary convictions in the State of Montana do not qualify as "violent felonies" for purposes of the ACCA because the statute under which those convictions occurred defines the crime of burglary to include burglaries of motor vehicles. Thus, he argues, the Montana statute encompasses conduct that goes beyond the definition of "generic burglary" outlined by the Supreme Court in Taylor. Further, citing the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 125 S. Ct. 738 (2005), Tenderholt contends it was a violation of his Sixth Amendment rights for the district court to look beyond the language of the

5

Montana burglary statute to determine whether his prior convictions were for "generic" burglary as outlined in Taylor. In other words, Tenderholt asserts that whether his prior Montana burglary convictions qualified as "violent felonies" for purposes of the ACCA was a question of fact that should have been proven to a jury under the beyond a reasonable doubt standard.

In Taylor, the Supreme Court was faced with determining the meaning of the word "burglary" as used in the ACCA. Under the ACCA, the term "violent felony" is defined to include "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another . . . or . . . is burglary . . . ." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). Reviewing the language and background of § 924(e), the Court concluded that the provision had "always . . . embodied a categorical approach to the designation of predicate offenses," 495 U.S. at 588, and that "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction." Id. at 588-89. Ultimately, the Court held "that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States," id. at 598, and "that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of

6

its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 599.

Here, the Montana burglary statute under which Tenderholt was previously convicted provided that "[a] person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein." Mont. Code Ann. § 45-6-204(1) (1996). In turn, the phrase "occupied structure" was defined as "any building, vehicle, or other place suitable for human occupancy or night lodging of persons or for carrying on business, whether or not a person is actually present." Id. § 45-2-101(45) (1996). Because the Montana burglary statute encompassed conduct involving vehicles, Tenderholt is correct in noting that the crime of burglary in Montana, as defined at the time of his prior convictions, went beyond the definition of "generic burglary" outlined in Taylor.

The question then becomes whether it was proper for the district court in this case to look beyond the Montana statute to the informations filed against Tenderholt to determine whether each of the three prior burglary convictions constituted "generic burglary" as defined by Taylor (and in turn qualified as "violent felonies" for purposes of the ACCA). In Taylor, the Supreme Court acknowledged that "[a] few States' burglary statutes . . . define burglary more

7

broadly [than the generic definition], e.g., by . . . including places, such as automobiles and vending machines, other than buildings." 495 U.S. at 599. In cases involving burglary convictions that arose in such States, the Court held, it is permissible for a sentencing court to look to the "indictment or information and jury instructions" to determine whether the defendant "was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict . . . ." Id. at 602. More recently, in Shepard, the Court held that where a prior burglary conviction was the result of a guilty plea or a bench trial, a sentencing court determining the character of that burglary (i.e., whether it constituted a "generic burglary") "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." 125 S. Ct. at 1257.

Applying those principles here, we conclude the district court acted properly in looking to the information underlying each of Tenderholt's prior burglary convictions. Moreover, Tenderholt does not deny that each of those informations establish that he was charged with, and thus necessarily convicted of, committing "generic burglary" within the meaning outlined in Taylor. In turn, there was no error on the part of the district court in concluding that Tenderholt's three prior burglary convictions qualified as "violent felonies" for purposes of the

8

ACCA.

We likewise reject Tenderholt's assertion that the determination of whether his prior burglary convictions qualified as "violent felonies" for purposes of the ACCA was a question of fact that, under the Sixth Amendment, was required to be proven to the jury beyond a reasonable doubt. We recently rejected an identical argument in United States v. Moore, 401 F.3d 1220 (10th Cir. 2005), concluding that neither Booker nor Shepard "require the government to charge in an indictment or prove to a jury either the existence of prior convictions or their classification as 'violent felonies'" for purposes of the ACCA. 401 F.3d at 1221. In reaching this conclusion, we held that "determining whether a given felony constitutes a 'violent felony' is a question of law and not fact," and thus "the Sixth Amendment does not require the determination to be made by a jury." Id. at 1225. "In other words, the Sixth Amendment is not implicated so long as a district court determining the character of a prior burglary conviction limits itself" to examining the documents outlined in Taylor and Shepard. United States v. Bartlett, 133 Fed. Appx. 515, 518 (10th Cir. 2005) (unpublished decision) (rejecting identical argument).

In sum, the district court did not err or violate Tenderholt's Sixth Amendment rights by looking to the informations underlying his three prior burglary convictions, or in concluding that those convictions qualified as "violent

felonies" for purposes of the ACCA.

*Eighth Amendment violation - ACCA*

Tenderholt briefly asserts an Eighth Amendment challenge to the application of the ACCA in his case, arguing that the sentence imposed on him under the ACCA (250 months) was grossly disproportionate to the sentence that would have been imposed in the absence of the ACCA (70-87 months Guideline range). We review de novo constitutional challenges to a criminal sentence. United States v. Eaton, 260 F.3d 1232, 1237 (10th Cir. 2001). Likewise, we review de novo any constitutional challenges to a federal statute. See United States v. Price, 265 F.3d 1097, 1106 (10th Cir. 2001).

The Eighth Amendment's ban on cruel and unusual punishment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284 (1983). The Supreme Court has emphasized, however, that "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Id. at 290. It is not surprising then that, as noted by the government in its response brief, every circuit that has addressed an Eighth Amendment challenge to a sentence imposed under the ACCA has upheld it. See Aplee. Br. at 21 & n.4 (citing cases).

10

With that backdrop in mind, we conclude that Tenderholt's Eighth Amendment challenge to his sentence is without merit. In Helm, the Supreme Court expressly recognized that "prior convictions are relevant to the sentencing decision . . . ." 463 U.S. at 296, n.21. Here, Tenderholt was not sentenced to a 250-month term of imprisonment solely because he was a felon in possession of a firearm. Rather, that term of imprisonment was the result of the combination of the instant offense (i.e., being a felon in possession of a firearm) and Tenderholt's three prior violent felony convictions. Notably, in enacting the ACCA, Congress chose to respond to this precise type of scenario by "infus[ing] federal law enforcement into efforts at curbing and incapacitating armed, habitual (career) criminals." United States v. Cardoza, 129 F.3d 6, 19 (1st Cir. 1997) (quoting legislative history to ACCA) (internal quotation marks omitted). Thus, in light of the "total conduct for which [Tenderholt] was sentenced," there is no basis for concluding that the sentence actually imposed was grossly disproportionate. Id.

*Denial of acceptance of responsibility*

The PSR recommended that, even though Tenderholt had pled guilty, he should not receive a two-level reduction in his offense level for acceptance of responsibility due to his "planned escape from custody" during the pendency of the federal charges against him. ROA, Vol. 4, PSR at 8. Tenderholt objected to this recommendation, arguing that he was not involved in an attempted escape

11

from custody. At the sentencing hearing, the government presented three witnesses who testified about the alleged escape plans. At the conclusion of that testimony, the district court found that Tenderholt "and his cellmate were clearly planning an escape," and that their efforts at executing that plan were "continually in progress" up to and including the date of Tenderholt's change of plea hearing. ROA, Vol. 3, at 63. Accordingly, the district court adopted the PSR's recommendation and denied Tenderholt a two-point reduction for acceptance of responsibility.

On appeal, Tenderholt contends that the evidence before the district court was not sufficient to support its factual findings. In particular, Tenderholt argues that "[n]o specific evidence was provided that [he] attempted escape," and there were "[n]o fingerprints" and "no [actual] escape . . . ." Aplt. Br. at 21.

Section 3E1.1(a) of the Guidelines provides that a defendant's offense level should be decreased by two levels if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). "The defendant has the burden of demonstrating, by a preponderance of the evidence, that he is entitled to a downward adjustment for acceptance of responsibility." United States v. Virgen-Chavarin, 350 F.3d 1122, 1135 (10th Cir. 2003). "Whether the facts of a particular case warrant a reduction for acceptance of responsibility is a question of fact that [this court] review[s] under the clearly erroneous standard." United

12

States v. Hamilton, 413 F.3d 1138, 1145 (10th Cir. 2005) (internal quotation marks omitted).

Reviewing the transcript of Tenderholt's sentencing hearing, we conclude the evidence presented by the government amply supported the district court's factual findings. In particular, the government's evidence established that Tenderholt was confined in the Washington County (Colorado) Jail while awaiting the outcome of the federal charges against him. On June 5, 2004, jail officials checked the cell that Tenderholt shared with another inmate and determined that it "look[ed] normal." ROA, Vol. 3, at 17. Tenderholt remained in that cell until June 30, 2004. Id. On June 30, 2004, a "shank" (homemade knife) made from an angle iron was found in Tenderholt's cell on his bed. Id. at 24. An ensuing search of Tenderholt's cell revealed another homemade weapon, id. at 26, as well as "major scarring [around] and a hole drilled into" the cell window. Id. at 31. In addition, the caulking around the cell window had been "completely removed . . . and some toilet paper had been made to appear to look like ca[u]lking to the base of the window." Id. at 32. Finally, a search of Tenderholt's tote bag, which he kept in his cell, revealed (a) a tamperproof bolt that had been removed from the bunk bed in the cell in order give Tenderholt and his cellmate access to the angle iron, (b) a piece of metal from an unknown source, and (c) "several sheets that had been torn up and made into . . . a rope."

13

Id. at 33. In light of this evidence, the district court did not err in finding that Tenderholt had planned for, and possibly attempted to execute, an escape.

In turn, we conclude the district court properly denied Tenderholt a downward adjustment for acceptance of responsibility. Although a guilty plea "will constitute significant evidence of acceptance of responsibility[,] . . . this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.3. For example, if a defendant fails to voluntarily terminate or withdraw from criminal conduct or associations, that may justify a denial of an adjustment for acceptance of responsibility. Id., cmt. n.1(b). Likewise, if a defendant engages in conduct that could justify an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice, that "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Id. cmt. n.4. Clearly, attempting to escape from custody while awaiting the outcome of federal charges is inconsistent with the acceptance of responsibility and justifies a denial of a downward adjustment under § 3E1.1. See United States v. Robinson, 390 F.3d 853, 888 (6th Cir. 2004) (affirming denial of downward adjustment for acceptance of responsibility due to defendant's escape prior to sentencing); United States v. Amos, 984 F.2d 1067, 1073 (10th Cir. 1993) (same); see generally U.S.S.G. § 3C1.1, cmt. n.4(e) (stating that "escaping or attempting to escape from custody before trial or sentencing" constitutes

14

obstruction of justice).

*Booker error*

Tenderholt contends that his "case ought to be reversed and remanded in light of Booker for any and all parts of the sentencing which were based on the guidelines . . . ." Aplt. Reply Br. at 5. The government, in its response brief, acknowledges that the district court committed non-constitutional Booker error by applying the Guidelines in a mandatory fashion (an issue that Tenderholt does not address at all), but asserts that the error was harmless and thus does not justify vacating Tenderholt's sentence and remanding for resentencing.

We agree with the government that the district court committed only non-constitutional Booker error in sentencing Tenderholt. Constitutional Booker error occurs when a district court "re[lies] upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). Here, because of the application of the ACCA, no such enhancements occurred. That leaves only non-constitutional Booker error, which occurs where, as here, a sentencing court applies the guidelines in a mandatory fashion, "even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." Id. at 731-32.

Because Tenderholt asserted Blakely-based objections at the time of

15

sentencing, that was sufficient to have preserved the non-constitutional <u>Booker</u> error. <u>See</u> <u>United States v. Labastida-Segura</u>, 396 F.3d 1140, 1142-43 (10th Cir. 2005). The question, then, is whether the district court's error was harmless, i.e., whether the error affected the district court's selection of the sentence imposed. <u>See</u> <u>id.</u> at 1143. As noted by the government, the fact that the district court in this case imposed a sentence well above the bottom of the Guideline range and expressly outlined its reasons for doing so (i.e., to protect society from a dangerous criminal who was unwilling to change his behavior) indicates that the non-constitutional <u>Booker</u> error was, indeed, harmless. <u>See</u> <u>United States v. Campbell</u>, No. 04-5127, 2005 WL 1625242, *2 (10th Cir. Jul. 12, 2005) (unpublished decision) (reaching similar conclusion where district court imposed a sentence in the middle of the guideline range). In other words, the district court's actions in sentencing Tenderholt indicate that, even absent mandatory application of the Guidelines, Tenderholt would not have received a lower sentence.

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

16