**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0526n.06

**Case No. 08-1937**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 30, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DAMOND MOSLEY, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE: MOORE and GILMAN, Circuit Judges; PHILLIPS[*], District Judge.


**THOMAS W. PHILLIPS, District Judge.**


Defendant was convicted, after a bench trial, of being a felon in possession of a firearm. The trial judge found that the sentencing enhancement in the Armed Career Criminal Act applied and sentenced defendant to 180 months of imprisonment. Defendant challenges his conviction and sentence, alleging: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in accepting a stipulation by the parties that the firearm affected interstate commerce; (3) the trial court erred in accepting expert testimony without ruling that the witness was qualified to testify as an expert witness; (4) his prior conviction for felonious assault was not a serious drug offense or

_____

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

violent felony under Michigan law; and (5) the sentencing enhancements under the Armed Career Criminal Act are unconstitutional. Finding no merit in defendant's arguments, we affirm his conviction and sentence.

## I. Background

Defendant waived his right to a jury trial, and trial commenced before the Honorable Sean Cox in the Eastern District of Michigan on March 20, 2008. Prior to calling the first witness, the government placed two stipulations on the record. The first stipulation was that defendant had been convicted of a felony. The second stipulation was that the firearm in question, a Smith & Wesson .40 caliber semiautomatic pistol, was not manufactured in the State of Michigan and therefore traveled in and affected interstate commerce. The government then presented the testimony of the two officers who arrested defendant, and Chana Gudger, a forensic technician with the Detroit Police Department.

The trial transcript shows that on November 1, 2007, at approximately 12:30 a.m., two uniformed City of Detroit police officers observed a black Lincoln turn left without stopping at a red light. The officers made a U-turn, activated the overhead lights and effected a traffic stop on the Lincoln. Defendant was the sole occupant in the vehicle. After the officers pulled the Lincoln over, they parked directly behind the vehicle and kept the patrol car's headlights on to illuminate the inside of the vehicle. Officer Tomaszewski approached on the passenger side and Officer Woodcum approached on the driver's side.

As Tomaszewski approached, he saw the defendant make a downward motion with his right arm and right shoulder. Tomaszewski shined his flashlight on the driver, but the driver's right hand was not visible because it was between the driver's seat and the passenger seat. Tomaszewski saw the driver pull his hand from between the driver's seat and the passenger seat, place his hand on his lap, and then grab the steering wheel in a hurried manner.

Officer Woodcum approached the driver's side door of the vehicle and requested defendant to present his driver's license, registration, and proof of insurance. Defendant complied. After Woodcum engaged in a brief conversation with defendant, the two officers walked back in the direction of the patrol vehicle. Tomaszewski alerted Woodcum that he had observed defendant making furtive gestures as though he were attempting to conceal something in the Lincoln. The officers immediately returned to the Lincoln. Woodcum asked defendant to exit the vehicle and obtained defendant's consent to search the car. Defendant got out of the Lincoln and Woodcum patted him down and escorted him back to the patrol car. Tomaszewski searched the Lincoln between the driver's seat and the center console, where he previously had observed defendant's hand hidden from view. He shined his flashlight in the area and observed an upside down handgun. It was a loaded .40 caliber blue steel automatic handgun. The officers placed defendant under arrest and the vehicle was further searched, but no additional contraband was found.

On November 2, 2007, the firearm was sent to an evidence lab, where Chana Gudger, a forensic technician, examined it for latent fingerprints. Gudger was unable to lift a latent fingerprint

from the firearm or the live rounds, but was able to lift a latent fingerprint from the magazine, which was then sent to another unit for further analysis. This latent fingerprint was later determined unsuitable for comparison purposes.

## II. Analysis

A.    Substantial Evidence Supports Defendant's 18 U.S.C. § 922(g)(1) Conviction.

Defendant first challenges his conviction on the basis that there was insufficient evidence introduced at trial to demonstrate that he possessed the firearm found in the car he was driving. This court reviews a defendant's sufficiency of the evidence claim to consider "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Copeland,* 321 F.3d 582, 600 (6th Cir. 2003). In undertaking this analysis, this court neither independently weighs the evidence nor judges the credibility of witnesses who testified at trial. *United States v. Talley,* 164 F.3d 989, 996 (6th Cir. 1999).

Defendant was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The elements of being a felon in possession of a firearm pursuant to § 922(g)(1) are: (1) the defendant had a previous felony conviction; (2) the defendant possessed a firearm; and (3) the firearm traveled in or affected interstate commerce. *United States v. Gardner,* 488 F.3d 700,

713 (6ᵗʰ Cir. 2007). The parties stipulated to the first and third elements at trial, so defendant's insufficiency challenge addresses whether there was sufficient evidence of possession.

Possession may be either actual or constructive. Actual possession means that the defendant had physical control over the weapon, whereas constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *Gardner*, 488 F.3d at 713. Moreover, proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession. *Id.* Both actual and constructive possession may be proved by circumstantial evidence. *United States v. Murphy,* 107 F.3d 1199, 1208 (6ᵗʰ Cir. 1997).

In this case, defendant was the sole occupant of the vehicle containing the gun. Officer Tomaszewski testified that as he initially approached the vehicle after the traffic stop, he observed defendant make movements that were consistent with an individual who was attempting to conceal something. Tomaszewski further testified that he recovered the firearm in the precise area where he earlier had seen defendant's suspicious movements. Defendant argues that the evidence shows only that he was present near the firearm and that mere presence alone does not show the requisite knowledge, power or intention to exercise control over the gun to prove constructive possession. However, this court has rejected defendant's argument in similar cases. *See, e.g.*, *Murphy*, 107 F.3d at 1208 (upholding conviction where defendant was the driver and only occupant in a vehicle, and the weapon was found within close proximity to where the defendant had been sitting); *United States*

*v. Newsome*, 452 F.3d 593, 609 (6ᵗʰ Cir. 2006) (upholding conviction where defendant was the only person in the vehicle where the gun was found underneath his seat and defendant appeared as if he was putting something under the seat); *United States v. Carter*, 355 F.3d 920, 925 (6ᵗʰ Cir. 2004) (upholding conviction where police saw the defendant attempting to conceal the weapon).

We conclude that, viewed in the light most favorable to the prosecution, the evidence was sufficient to support the trial court's finding that defendant possessed the firearm as charged in the indictment.

B.      Sufficient evidence supported the trial court's finding that the firearm had traveled in and affected interstate commerce.

The parties stipulated in Exhibit Two that the firearm, a Smith and Wesson .40 caliber handgun, was not manufactured in Michigan and therefore traveled in and affected commerce. During the trial, it was revealed that the weapon was stolen from Ohio and brought to Michigan by unknown person(s). Defendant failed to challenge the stipulation at trial, but now asserts that it was error for the trial court to accept the stipulation because "a stolen gun cannot affect commerce." In support of his argument, defendant relies on *United States v. Lopez,* 514 U.S. 549 (1995), to suggest that this court should use the test enunciated in *Lopez,* to determine whether there was a nexus affecting commerce. However, defendant's reliance upon *Lopez* is misplaced because his position has been rejected by federal courts considering the constitutionality of § 922(g)(1) after *Lopez*, including the Sixth Circuit Court of Appeals. *See United States v. Murphy,* 107 F.3d 1199 (6ᵗʰ Cir.

1997); *United States v. Napier*, 233 F.3d 394 (6th Cir. 2000); *see also, United States v. Costigan,* No. 00-2457, 2001 WL 535734 (1st Cir. Mar. 26, 2001); *United States v. Santiago,* 238 F.3d 213 (2d Cir. 2001); *United States v. Gallimore*, 247 F.3d 134 (4th Cir. 2001); *United States v. Davis,* 242 F.3d 1162 (9th Cir. 2001); *United States v. Wesela,* 223 F.3d 656 (7th Cir. 2000); *United States v. Dorris,* 236 F. 3d 582 (10th Cir. 2000); *United States v. Gatewood*, 84 F.3d 670 (3d Cir. 1996).

Moreover, this court has found that when a defendant stipulates to certain facts, the government is relieved of its burden of producing any other evidence in order to establish the fact stipulated. *See United States v. Ayoub*, 498 F.3d 532, 546-47 (6th Cir. 2007) (holding that a stipulation that the firearm "had traveled in and affected interstate commerce" was sufficient to prove the interstate nexus element beyond a reasonable doubt). Because defendant's *Lopez* challenge to the constitutionality of § 922(g)(1) is without merit, the trial court did not err in accepting the parties' stipulation that the firearm had traveled in and affected interstate commerce.

C.      The trial court erred by not qualifying the forensic technician as an expert witness.

Next, defendant argues that the trial court should not have relied upon alleged expert testimony offered by the forensic technician who testified that no usable fingerprints could be lifted from the firearm at issue. The government responds that the forensic technician testified as a fact witness, not an expert; therefore, the trial court was not required to find that the witness was qualified to testify as an expert witness.

This court reviews the admission or exclusion of expert evidence for an abuse of discretion. *United States v. Demjanjuk*, 367 F.3d 623, 633 (6th Cir. 2004). A "trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and the court's action is to be sustained unless manifestly erroneous." *Id.* Moreover, this discretion is particularly broad in a bench trial. *Id.*

The testimony of experts is governed by Rule 702 of the Federal Rules of Evidence. That rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles or methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Accordingly, a witness who testifies based on "scientific, technical, or other specialized knowledge," must be qualified as an expert to present such testimony, whether it is limited to facts or includes the expert's opinion. The advisory committee notes support the conclusion that an expert must be qualified to present fact and/or opinion testimony:

> Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.

*Id.* Advisory Committee Notes (1982 Proposed Rule).

In this case, Chana Gudger, the forensic technician who analyzed the firearm for latent fingerprints, testified at trial as an expert witness. Accordingly, the trial court was required to qualify her as an expert witness. We have explained that "lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007); *see also United States v. Swafford*, 385 F.3d 1026, 1030-31 (6th Cir. 2004) (noting that if a police officer is properly qualified as an expert, the officer can testify regarding the "characteristics of criminal activity," including the hallmarks of drug distribution, the use of firearms in drug trafficking, and the usual price of drugs). The government examined Gudger about her prior experience examining firearms and other articles for fingerprints and the procedures she employed. Gudger testified that during her six years as a forensic technician with the Detroit Police Department, she examined over 5,000 pieces of evidence for latent fingerprints and examined between 2,000 and 3,000 firearms for such fingerprints:

> Q. In about what percentage of those firearms that you've processed or been involved in the processing of, where you able to find latent prints on a firearm?
>
> A. About two percent.
>
> Q. And what are some of the reasons why you weren't able to lift prints off of 98 percent of the guns you've processed?
>
> A. Because how it was handled.

Although Grudger's testimony was based on her personal observations of the firearm, her conclusions were drawn from technical knowledge of forensic science that she learned through

9

training and job experience. *See United States v. Jones*, 107 F.3d 1147, 1161 (6ᵗʰ Cir. 1997) (finding no error in qualifying handwriting analyst as an expert based on his 'training experiences, his job responsibilities [and] his years of practical experience"). Her testimony included her opinion, based on her training and experience, as to why she did not usually find fingerprints on firearms. Additionally, the prosecutor offered Gudger as an expert witness, and the district court believed that she had "technical or other specialized knowledge that would assist the trier of fact" and that she therefore had to be qualified as an expert.

Because the testimony that Gudger offered was based on her technical skills and knowledge, the district court erred when it failed to determine definitely whether Gudger would be qualified as an expert under Rule 702 regardless of whether her testimony was going to be strictly fact-based or whether she was going to offer her opinion. However, such error is not in all cases reversible; rather "reversible error occurs only where the district court's erroneous admission of evidence affects a substantial right of the party." *White*, 492 F.3d at 404 (citing Fed. R. Evid. 103(a)) . "An error affects a defendant's substantial rights if it is likely to have had any substantial effect on his conviction." *United States v. Whittington*, 455 F.3d 736, 740 (6ᵗʰ Cir. 2006) (citations omitted); *see also Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) ("An error is harmless 'when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"). It follows, then, that our "inquiry involves an assessment of the likelihood that the error affected the outcome of the case." *Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 157 (6ᵗʰ Cir. 1988). We look, then, to "the proceedings in their entirety, in light of the proofs at trial." *Beck v. Haik*, 377 F.3d

624, 635 (6th Cir. 2004). Here, we find that although the trial court should have qualified Gudger as an expert witness, any such error was harmless in the context of this bench trial. Gudger's testimony was that she could not identify defendant's fingerprints on the firearm, a fact that did not harm defendant. Further, a review of the trial transcript shows that the court did not rely on Gudger's testimony in finding that the defendant possessed the firearm found in his vehicle, but rather relied on the two officers' testimony concerning the traffic stop and search of the defendant's vehicle. Consequently, we find defendant's substantial rights were unaffected by the district court's error.

> D.     Defendant's prior conviction for felonious assault qualifies as a "violent felony" under the Armed Career Criminal Act.

Defendant's sentence was enhanced pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The ACCA authorizes an enhanced prison term for a defendant who is (1) convicted of being a felon in possession of a firearm, and (2) has "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Defendant argues that he should not have been subject to an enhanced sentence under the ACCA because his prior conviction for felonious assault does not constitute a "violent felony" under the statute. Because defendant did not raise this issue below, the court reviews his challenge for plain error. *United States v. Bostic,* 371 F.3d 865, 872-73 (6th Cir. 2004). To establish plain error, defendant must show (1) error (2) that "was obvious or clear," (3) that "affected defendant's substantial rights" and (4) that "affected the fairness, integrity, or public

11

reputation of the judicial proceedings." *United States v. Vonner,* 516 F.3d 382, 386 (6th Cir. 2008).

The ACCA defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

Michigan state law defines the crime of felonious assault, or assault with a dangerous weapon, as follows:

> Sec. 82.  (1) Except as provided in subsection (2), a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

M.C.L.A. 750.82.

The crime of felonious assault under Michigan law fits within the ACCA's statutory definition of "violent crime" because one of its elements is "the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. 924(e)(2)(B)(I). Although defendant appears to argue that mere possession of a weapon is not a violent felony, he fails to address the fact that his prior conviction involved both possession of a dangerous weapon and an assault.

Because defendant's prior Michigan conviction for felonious assault is defined as including the use, attempted use, or threatened use of physical force against the person of another, that conviction constituted a violent felony under the ACCA. The trial court, therefore, did not commit plain error when it enhanced defendant's sentence pursuant to the ACCA.

E.      Defendant's mandatory minimum sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

Defendant next argues that his 180-month sentence, the mandatory minimum sentence under the ACCA, violates the Eighth Amendment because it is disproportionately severe, and because it is cruel and unusual. However, at oral argument, defense counsel admitted that this court and several other courts of appeals have held that the mandatory minimum sentence that the ACCA requires is constitutional, *see United States v. Warren*, 973 F.2d 1304 (6th Cir. 1992) (holding that fifteen year sentence under the ACCA was not "cruel and unusual punishment"); *United States v. Pedigo*, 879 F.2d 1315 (6th Cir. 1989) (sentences under the ACCA are not "cruel and unusual"); *see also United States v. Reynolds,* 215 F.3d 1210 (11th Cir. 2000); *United States v. Villar,* 184 F.3d 801 (8th Cir.

13

1999); *United States v. Cardoza*, 129 F.3d 6 (1st Cir. 1997); *United States v. Presley,* 52 F.3d 64 (4th Cir. 1995); *United States v. Hayes,* 919 F.2d 1262 (7th Cir. 1990); *United States v. Baker,* 850 F.2d 1365 (9th Cir. 1988); *United States v. Tenderholt,* 149 F. App'x 805 (10th Cir. 2005), but wanted to preserve the issue in the event the Supreme Court or this court decides the issue to the contrary.

Defendant next argues that the trial court should have considered his personal circumstances in its sentencing analysis, but the ACCA requires only that the district court find that defendant was convicted of being a felon in possession of a firearm and that he has three prior convictions for a violent felony or a serious drug offense, or both.  *See* 18 U.S.C. § 924(e)(1).

Because defendant was convicted of possession of a firearm by a felon, and the trial court found that he had one prior conviction for a violent felony and two prior convictions for serious drug offenses, the trial court properly enhanced his sentence under the ACCA.

### III.  Conclusion

Accordingly, we **AFFIRM** the district court's judgment and sentence.